J-S41042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RELINQUISHMENT OF B.L., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L., FATHER | : | No. 595 MDA 2019 |

Appeal from the Order Entered December 31, 2018
in the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): A-30-2017

BEFORE:   LAZARUS, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 29, 2019**

J.L. (Father) appeals from the order entered December 31, 2018, in the Court of Common Pleas of Lackawanna County, terminating involuntarily his parental rights to his daughter, B.L. (Child), born in August 2010.[1]  We affirm.

The orphans' court summarized the facts and procedural history of this matter as follows.

> [The] Lackawanna County Office of Youth and Family Services [OYFS] originally placed [C]hild [by order dated February 3, 2015,] due to the parents' incarceration.  After Father's release from incarceration and stay in a sober house, OYFS worked with Father to return [Child] home[.]  [H]owever[,] in April 2016, Father tested positive for cocaine and was incarcerated due to a probation violation in May 2016.  OYFS again worked with Father and he started a trial home visit in August 2016.  [Child was] returned to Father's care in [September] 2016.  Father was arrested on November 2016 for drug charges while [C]hild's [half-sibling, L.L.,] was in the car.  Father remains incarcerated.

---

[1] Child's mother, J.D., is deceased.

* Retired Senior Judge assigned to the Superior Court

Orphans' Court Opinion, 4/29/2019, at 1 (footnote omitted).

On June 5, 2017, OYFS filed a petition to terminate Father's parental rights to Child involuntarily pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on November 16, 2017, and entered an order terminating Father's rights on November 20, 2017. Father appealed. On December 3, 2018, a prior panel of this Court vacated the order without prejudice and remanded for the orphans' court to determine whether a conflict existed between Child's legal interests and best interests. *See In re Adoption of L.L.*,[2] 203 A.3d 288 (Pa. Super. 2018) (unpublished memorandum). Specifically, this Court explained that Child's dependency guardian *ad litem* (GAL) represented her during the termination hearing. *Id.* at 6. Child was seven years old at the time of the hearing, but the GAL did not set forth her legal interests on the record. *Id.* at 7. At the conclusion of the hearing, the GAL spoke solely regarding Child's best interests when arguing in support of the termination of Father's parental rights. *Id.* at 6-7.

---

[2] Originally, OYFS believed that Father was also the biological parent of Child's half-sibling, L.L. A paternity test has since revealed that Father is not L.L.'s parent. N.T., 11/16/2017, at 28.

On December 7, 2018, the orphans' court entered an order scheduling a hearing for December 27, 2018.[3]  On December 27, 2018, the orphans' court convened a hearing in order to address this Court's concerns.[4]  After the hearing, on December 31, 2018, the orphans' court once again terminated Father's parental rights to Child involuntarily.[5]

_____

[3] The certified record does not indicate who was served with this order.

[4] Counsel for OYFS and Child's GAL appeared at the hearing.  Neither Father nor his counsel appeared.  When the orphans' court asked whether Father was coming, counsel for OYFS responded, "No." N.T., 12/27/2018, at 2.

[5] This order was served on Child's GAL and counsel for OYFS.  The docket does not show it was served on Father or counsel for Father.

In addition, we observe with disappointment that the orphans' court and the GAL seemingly did nothing to address this Court's concerns at the remand hearing on December 27, 2018.  During the hearing, the GAL stated simply that Child had not "express[ed] anything" to him, and that she was "eight and … not of an age to make that … independent assessment."  N.T., 12/27/2018, at 4.  The orphans' court accepted the GAL's conclusion.  **See** Orphans' Court Opinion, 4/26/2019, at 2 ("Based on [the orphans' c]ourt's colloquy of the [GAL] and that [C]hild is not of an age to express a preference, [the orphans' c]ourt believes that no conflict exists between [C]hild's legal interests and best interests.").

Our Supreme Court's case law is clear that eight years old is not too young to express a preferred outcome in a contested involuntary termination proceeding.  **See In re T.S.**, 192 A.3d 1080, 1089 n.17 (Pa. 2018) (quoting Pa.R.P.C. 1.14, Explanatory Comment 1) (contrasting the children at issue in that case, who were two or three years old, with "'children as young as five or six years of age … having opinions which are entitled to weight in legal proceedings concerning their custody'").  The failure of the orphans' court and the GAL to address our concerns is particularly problematic because the testimony presented at the termination hearing on November 16, 2017, is suggestive of a potential conflict of interest.  **See** N.T., 11/16/2017, at 79 ("[Child] has, at times, said that she would like to be with her father.").

*(Footnote Continued Next Page)*

The next docket entry is an order entered on March 12, 2019, which provides that "upon review of [Father's] motion to file appeal *nunc pro tunc*, it is hereby ordered and decreed that said motion is granted."[6] Order, 3/12/2019, (capitalization altered). The orphans' court ordered Father to file a notice of appeal within 30 days. Father filed a notice of appeal on April 10, 2019.[7] On April 29, 2019, the orphans' court filed an opinion pursuant to Pa.R.A.P. 1925(a).[8]

_____
*(Footnote Continued)*

However, this Court does not have the authority to review *sua sponte* concerns regarding counsel's actions or inactions with respect to a child's best and legal interests in an involuntary termination of rights proceeding. ***In re Adoption of K.M.G.***, ___ A.3d ___, 2019 WL 4392506 at *10 (Pa. Super. 2019) (*en banc*). Therefore, we are unable to consider this issue further.

[6] The motion giving rise to this order does not appear in the certified record. However, as referenced *supra*, it does appear that there was a breakdown in the processes of the court as it is not at all clear that Father had notice of either the December 27, 2018 hearing or the order that was entered terminating his parental rights. Under such circumstances, this Court has permitted an appeal to be filed outside the 30-day timeframe required by Pa.R.A.P. 903(a). ***See In re L.M.***, 923 A.2d 505 (Pa. Super. 2007) (declining to quash the mother's appeal where it was filed more than 30 days after the order terminating her parental rights where there was no indication that the order was entered on the docket with the required notation that appropriate notice had been given).

[7] Father's notice of appeal included docket numbers from Child's termination and dependency proceedings. On May 7, 2019, this Court issued a rule to show cause as to why Father's appeal should not be quashed. ***See*** Pa.R.A.P. 341, Note ("Where ... one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); ***Commonwealth v. Walker***, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court
*(Footnote Continued Next Page)*

Father now raises the following claims for our review.

A. Whether the [orphans'] court erred as a matter of law and/or manifestly abused its discretion in determining [OYFS] sustained its burden of proving the termination of Father's parental rights is warranted under [subs]ections 2511(a)(1) and/or 2511(a)(2) of the Adoption Act?

B. Even if this Court concludes [OYFS] established statutory grounds for the termination of Father's parental rights, whether

*(Footnote Continued)* ───────────────────

to quash the appeal"). Father's counsel filed a response on May 17, 2019, in which she averred that Father was appealing only the involuntary termination of his parental rights to Child.

Our review of Father's notice of appeal, concise statement, and appellate issues confirms that Father is challenging only the involuntary termination. Therefore, we conclude that there is no jurisdictional impediment to our review of Father's appeal. *See In re Adoption of M.S.*, 2019 WL 4235227 (Pa. Super. 2019) (unpublished memorandum at 3 n.3) (stating "[f]ather's concise statement and appellate issues demonstrate he is challenging on appeal only the order terminating his parental rights to [c]hild. Thus, we see no jurisdictional impediments to our review under *Walker*[.]"); Pa.R.A.P. 126(b) (unpublished memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value).

[8] Father did not file a concise statement of errors complained of on appeal along with his notice of appeal in violation of Pa.R.A.P. 1925(a)(2)(i). In fact, it is not clear Father filed a concise statement at all with the orphans' court. This Court received a copy of Father concise statement on May 1, 2019. Despite Father's failure to comply with Pa.R.A.P. 1925, we are not required to find his issues waived. Instead, we are permitted to evaluate the situation on a case-by-case basis. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009). Because neither OYFS nor the GAL has objected to Father's late-filed concise statement, and because the orphans' court already had the opportunity to author an opinion in response to a timely-filed concise statement that was filed along with Father's prior appeal, we will not find his issues waived. *See Harrell v. Pecynski*, 11 A.3d 1000 (Pa. Super. 2011) (holding that where there was not objection or claim of prejudice and the trial court had the opportunity to address the issues, we will not find the issues waived).

the [orphans'] court nevertheless erred as a matter of law and/or manifestly abused its discretion in determining [OYFS] sustained its additional burden of proving the termination of Father's parental rights is in the best interests of [C]hild?

Father's Brief at 11 (suggested answers and unnecessary capitalization omitted).

We review Father's claims in accordance with the following standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child

under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***L.M.***, 923 A.2d at 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court did not specify precisely upon which grounds it was terminating Father's parental rights. ***See*** Orphans' Court Opinion, 4/29/2019, at 2 (finding generally "that the statutory requirements for involuntary termination have been proven by clear and convincing evidence [and that] the relinquishment of parental rights will best serve the needs and welfare of [Child]"); Orphans' Court Opinion, 12/21/2017, at 2 (same). Despite the orphans' court's failure to specify the grounds for termination, we may affirm the order if there is any basis to do so. ***See In re B.C.***, 36 A.3d 601, 606 (Pa. Super. 2012) ("[W]e may uphold a termination decision if any proper basis exists for the result reached."). Furthermore, so long as OYFS has sustained its burden of proof as to any one subsection of subsection 2511(a), as well as subsection 2511(b), we may affirm. ***In re J.E.***, 745 A.2d 1250 (Pa. Super. 2000). Here, we analyze the orphans' court's decision pursuant to subsections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We begin by assessing whether the orphans' court committed an abuse of discretion by terminating Father's rights to Child pursuant to subsection 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the

- 8 -

contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Importantly, "a parent's incarceration is relevant to the [subsection 2511](a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

Regarding subsection 2511(a)(2), Father acknowledges in his brief that he is incarcerated, which prevents him from parenting Child. Father's Brief at 23-24. However, he contends that his incarceration alone is not sufficient evidence of parental incapacity. *Id.* at 24 (citing *In re R.I.S.*, 36 A.3d 567 (Pa. 2011) (plurality)). Father maintains that his release from incarceration is imminent, and that he will do whatever is necessary to cooperate with OYFS, and proceed with the reunification process. *Id.*

The orphans' court explained its decision to terminate Father's parental rights involuntarily as follows, in relevant part.

> The child's placement in foster care is appropriate and the child is doing well. The circumstances that lead [*sic*] to placement still exist. This child needs permanency in her life. Aside from approximately three months with Father, the child has been in foster care since February [of] 2015. Father has poor decision making, which is evidenced by his continued criminal activity and allowing [Child] to be in dangerous situations. If he was released from incarceration today, there is still a question as to when and/or if the child would return to Father….

Orphans' Court Opinion, 4/29/2019, at 1-2.

Our review of the record supports the findings and conclusions of the orphans' court. As detailed above, Child entered foster care in February 2015, due in part to Father's incarceration on drug charges. N.T., 11/16/2017, at 10-11. Father made apparent progress toward regaining custody of Child. However, he reversed that progress by testing positive for cocaine in April 2016, and returning to incarceration in May 2016. *Id.* at 22-23. Despite Father's serious mistake, the reunification process persisted. The record indicates that Father began a trial home visit with Child in August 2016, and that Child formally returned to Father's care in September 2016. *Id.* at 26-27. A few months later, in November 2016, Father was again incarcerated on drug charges, which remained pending at the time of the November 16, 2017 hearing. *Id.* at 26, 56. Father remained incarcerated at the time of the hearing and there was no indication when he would be released.

Even during the brief period of time that Child was reunified with Father, the record indicates that he failed to provide her with appropriate care. OYFS supervisor Nikki Ganczarski testified that Child reported concerning details about her time living with Father. Specifically, Child reported that Father left her in the care of her mother, J.D., who OYFS believed was suffering from unresolved substance abuse issues. *Id.* at 75. Ms. Ganczarski explained as follows.

- 10 -

…. [Child] had said while she was living with [Father], [Father] would be at work and [J.D.] would be taking care of her and [L.L.], and she said [J.D.] would often be sleeping and not taking care of them and she would give herself and [L.L.] baths.[9]

She had also -- I asked her what else had happened during those times, and she would say that, ["Father] would come home and be really mad at [J.D.]. We were always hungry. We were never fed because [J.D.] was always sleeping during that time.["]

So, there's a lot of concerns as to [F]ather deciding to leave the children in [J.D.'s] care, who at the time we believed to have the substance abuse issues that [were] not being treated.

*Id.*

Thus, the record confirms that Father's life is chronically unstable. Due to his history of substance abuse, incarcerations, and poor decision-making, Father has not been a consistent or appropriate caregiver for Child since at least February 2015, when she was four and a half years old. At the time of the hearing on November 16, 2017, Child was seven years old. Child's life cannot remain on hold forever. As this Court has emphasized, "a child's life cannot be held in abeyance while a parent attempts to attain the

_____

[9] At the time these events were occurring, in the fall of 2016, Child would have been six years old, and L.L. would have been one year old. We observe that Ms. Ganczarski presented somewhat unclear testimony regarding whether Mother left Child alone while she was bathing L.L. After presenting the testimony quoted *supra*, which suggested J.D. did leave Child alone, Ms. Ganczarski continued, "[t]he care of the children, thankfully they were okay, but had that time she not been present during the bath, something awful could have happened to the children." N.T., 11/16/2017, at 75.

maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). It is apparent that Father is incapable of parenting Child and that he cannot or will not remedy his parental incapacity at any point in the foreseeable future. Therefore, we affirm the termination of Father's parental rights pursuant to subsection 2511(a)(2).

We consider next whether the orphans' court abused its discretion by terminating Father's rights pursuant to subsection 2511(b). We adhere to the following analysis.

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

- 12 -

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

Instantly, Father contends that terminating his parental rights would be contrary to Child's needs and welfare, because he and Child share a strong bond, and because severing that bond would be "devastating" to her. Father's Brief at 27-31. Father adds that he has maintained contact with Child, even visiting with her while incarcerated, and that he acted appropriately during visits. *Id.* at 27-29.

The orphans' court rejected the proposition that Child's bond with Father should prevent the involuntary termination of Father's parental rights. The court explained as follows.

> This [c]ourt acknowledges that Father continues to communicate with [C]hild and everyone involved in the case and recognizes his compassion for [C]hild[.] [H]owever[,] that does not provide a loving, nurturing, permanent[,] and stable environment for [C]hild. Therefore, it is in the best interest of [C]hild to terminate the parental rights of Father.

Orphans' Court Opinion, 4/26/2019, at 2.

We conclude once again that the record supports the findings of the orphans' court. As Father contends, it was undisputed during the hearing that he and Child maintained a bond. *See*, *e.g.*, N.T., 11/16/2017, at 29 (OYFS supervisor Sadie O'Day testifying that Father "has always had a strong bond with [Child]"). It is clear that the court considered this bond

when reaching its decision, as our case law requires. However, the mere existence of a bond does not preclude the termination of parental rights. **N.A.M.**, 33 A.3d at 103. As stated above, a court may place equal or greater weight on the many other factors that could be relevant to a child's needs and welfare, including the child's need for permanence and stability, as well as his or her relationship with pre-adoptive foster parents. **C.D.R.**, 111 A.3d at 1219.

In this case, as discussed during our analysis of subsection 2511(a)(2), the record demonstrates that Child is in dire need of permanence and stability, which Father cannot provide. **See id.** at 1220 ("Clearly, it would not be in [the c]hild's best interest for his life to remain on hold indefinitely in hopes that [m]other will one day be able to act as his parent."). In addition, Child has a strong and positive relationship with her pre-adoptive foster parents, who have been the only consistent caregivers in her life over the last several years. **See Matter of Adoption of M.A.B.**, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time."). Significantly, Child's half-sibling, L.L., resides in the same foster home as Child. Child shares a critical relationship with L.L. During the hearing, Ms. Ganczarski described Child's relationship with her foster parents and L.L. as follows.

They are very comfortable. It's very clear that they're very bonded to the foster parents. [L.L.] does refer to the foster parents as mama and dada. [Child] does call them Ms. [M.] and Mr. [M.], but it's very clear they're happy.

[Child] has told me she feels safe there, she's comfortable, that she likes living there. It's very obvious they're loved there, they're well taken care of.

And even the relationship with the foster parents' children, they're all very comfortable together. They're like siblings, the way they interact that I've observed.

\*\*\*

[Child] and [L.L.], they love each other. They're very connected, they're very bonded, as much as any other siblings are. There's no concerns for that relationship.

[Child] loves her sister, she likes to take care of her, she's always interacting with her sister. [L.L.] always smiles and laughs when [Child's] paying attention to her. So, there's no concerns for the relationship between [Child] and [L.L.]

N.T., 11/16/2017, at 67. In light of this testimony, it is clear that terminating Father's parental rights would best serve Child's needs and welfare. Thus, we affirm the order of the orphans' court pursuant to subsection 2511(b).

Based on the foregoing analysis, we conclude that the orphans' court did not commit an abuse of discretion by terminating Father's parental rights to Child involuntarily. Thus, we affirm the court's December 31, 2018 order.

Order affirmed.

Judge Murray concurs in the result.

Judge Lazarus files a dissenting statement.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/29/2019</u>